IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Yudi Hernandez,

        Plaintiff,

vs.                           Case No. 15-1170-JTM

Electric Insurance Company,

        Defendant.

MEMORANDUM AND ORDER

       The present declaratory judgment action addresses the rights of the parties in relation to a June 15, 2013 automobile accident between a Ford Ranger and a Honda Civic. Plaintiff Yudi Hernandez, a minor, was a passenger in the Civic, and later brought suit against the same car's driver, Sarah Banta, in Cowley County, Kansas District Court. Hernandez's father, Ernesto Hernandez also brought claims against Banta for the expenses incurred in Yudi's medical care.

       Banta was insured by a policy issued by defendant Electric Insurance with a $100,000 limit. However, Yudi and Ernesto argued that each was entitled to separate $100,000 recoveries.

       Yudi, Ernesto and Electric entered into a settlement agreement releasing Banta. The parties stipulated that Ernesto incurred substantial medical expenses on behalf of his daughter, and had standing in the state court action to seek recovery. Electric agreed to pay $100,000 to Ernesto, and that Yudi would be entitled to pursue a declaratory judgment action to resolve the language in the contract "to determine whether [Electric] owes another $100,000 'per person' limit to Yudi." Electric agreed that if it lost the declaratory judgment to Yudi, "it shall pay her $100,000.00 as the parties agree that her claim is worth an amount

in excess of Electric's 'per person' liability limit."

The issue is now before the court on the parties' motions for summary judgment. Because Kansas case law clearly supports the conclusion that the $100,000 limit applies to all claims arising by, or on behalf of, an individual involved in an accident, summary judgment in favor of Electric is warranted.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the

principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Under the policy, Electric agreed:

> We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages Include prejudgment interest awarded against the "Insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

The term "bodily injury" is defined as "bodily harm, sickness or disease, including death that results."

The declarations page of the policy indicates, under the heading "COVERAGES - LIMITS OF LIABILITY - IN DOLLARS" that Electric agreed to liability limits for bodily injury for "Each Person/Accident" in the amount of "100/300K."

Finally, the policy sets out a "LIMIT OF LIABILITY" clause, which states:

> The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.
>
> The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:
>
> 1. "Insureds";
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations; or
> 4. Vehicles involved in the auto accident.

The issue in the present case is resolved by two Kansas Court of Appeals decision which clearly define Kansas law on the subject, *Farmers Ins. Co. Inc. v. Rosen by Rosen*, 17

Kan. App. 2d 468, 839 P.2d 71 (1992), and *Farmers Ins. v. Jokan*, 30 Kan.App.2d 1213, 57 P.3d 24 (2002).

In *Rosen*, the court construed a similar automobile policy, which included a $100,000 limit on liability expressed as "the maximum for bodily injury to any person." The claimants in *Rosen* included the father and mother of the pedestrian who was physically injured by the insured driver. The parents argued that they "each have a claim for 'loss of consortium, and medical bills and expenses,'" and thus the maximum liability clause did not limit their ability to recover under the policy as injured persons. 17 Kan.App.2d at 470. The court rejected the parents' argument that the policy was ambiguous:

> Is there genuine uncertainty as to the per person/per occurrence limits of the automobile policy provisions? We do not think so. By the language utilized, it is plainly provided that applicability of the $300,000 per occurrence limit is subject to the $100,000 per person limit, and loss of consortium claims fall within the per person limit. In our view, a loss of care and services claim, generically, is a claim for loss of consortium. We do not find the automobile policy definition of "bodily injury" has created genuine ambiguity despite usage of the same term in defining itself.
> ....
> We are persuaded and hold that the pertinent language of Farmers' automobile policy is unambiguous, that coverage under Farmers' automobile policy for James and Ginger Rosen's claims is subject to the policy's $100,000 per person liability limit applicable to April Rosen's claim, and that Farmers' exposure for the three Rosens' claims is limited to $100,000.

*Id.* at 472-74.

The same court later reached the same conclusion in *Jokan*, where a similar argument was advanced on behalf of the wife and two minor children based upon a fatal automobile accident. The claimants argued that their action for the "loss of earnings" of the decedent husband and father did not fall within the policy's $100,000 "per person" limit. The policy in question provided that "[t]he bodily injury liability limit for 'each person' is the maximum for bodily injury sustained by one person in any occurrence. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit." 30 Kan.App.2d at 1214.

The court of appeals addressed its earlier ruling in *Rosen*, and held that "[t]he

4

Jokans' derivative claims, just as the Rosens' claims, are subject to the per person limitation set forth in the policy." *Id.* at 1218. The court also rejected the Jokans' argument that he policy was ambiguous:

> Here, the policy does not contain conflicting parts. It clearly limits recovery under the liability section to $100,000 when one person is injured or killed in an accident. Farmers' failure to specifically list each conceivable exception does not create ambiguity. ....
>
> We conclude that the policy language here unambiguously limits recovery for bodily injury sustained by one person to $100,000 and that this limitation encompasses all derivative claims, including loss of income.

*Id.* at 1222. In reaching this conclusion, the court cited with approval *Kinsella v. Farmer Ins.*, 826 P.2d 433, 435 (Colo. App. 1992), observing that in that case "[t]he court found that the claim for medical expenses was not based upon separate injury to the plaintiff and, absent a showing that plaintiff sustained separate bodily injury, the $100,000 per person limitation applied." *Id.* at 1221.

Collectively *Rosen* and *Jokan* resolve the issue before this court. Despite the plaintiff's attempt to distinguish the two cases (Dkt. 20, at 2), there is simply no meaningful difference between the policy language at issue in *Rosen* and *Jokan* on the one hand, and that presented here. The Electric policy expressly provides that the maximum liability limit is defined as the maximum for "all damages ... arising out of 'bodily injury' sustained by any one person." This policy language is unambiguous and, under Kansas law, "encompasses all derivative claims." *Jokan*, 30 Kan. App. 2d at 1222.

The plaintiff responds by noting that there is some authority, apparently a minority view in the case law, which would reach a different conclusion. *See Cano v. Travelers Ins.*, 656 S.W.2d 266 (Mo. 1983); *Spaete v. Automobile Club Inter-Insurance Exch.*, 736 S.W.2d 480 (Mo. App. 1987). Unfortunately for the plaintiff, the court is obliged to follow Kansas law where it has been clearly set forth.

Nor is the court free to adopt a different, minority rule from another jurisdiction simply because the rule of law has been expressed by the Kansas Court of Appeals rather

than the Kansas Supreme Court.

> There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts[,] and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may have departed from prior decisions of the federal courts.

*West v. AT&T* , 311 U.S. at 223, 236-37 (1940). *See also Sports Unlimited, Inc. v. Lankford Enters.*, Inc., 275 F.3d 996, 1000â-1001 (10th Cir.2002); *United States v. Jones*, 501 F.Supp.2d 1284, 1292-93 (D. Kan. 2007) ("[p]ublished decisions of the Kansas Court of Appeals ... have precedential value in deciding what Kansas law is and how to apply it").

The plaintiff argues that the policy here is ambiguous, by looking at various portions of the contract sequentially and in isolation. Taking up the Declarations page of the policy, for example, she observes: "It bears noting that nowhere on the Declarations page is there any mention that there is any limit, exclusion or restrictions on what 'Each Person' means." (Dkt. 17, at 6).

The court finds no ambiguity in the policy. First, the plaintiff's approach is contrary to Kansas law, under which all the relevant provisions of an insurance policy must be considered together, rather than in isolation, and given effect. *Brumley v. Lee*, 265 Kan. 810, 812-13, 963 P.2d 1224 (1998).

Second, the suggestion that the Declarations page or the Insuring Agreement provision are free from any reference to the limitation of liability clause is untrue. The policy itself clearly manifests an intent that all provisions be read together. Thus the Declarations page sets forth the amount of coverage, but explicitly states that this is the maximum coverage consistent with the "LIMITS OF LIABILITY." The Declarations page also explicitly says that it is "*part* of your policy." (Emphasis added.)  Similarly, the

Insuring Agreement portion of the policy explicitly says that "the duty to settle or defend ends "when our limit of liability for this coverage has been exhausted by payment of judgments or settlements." Thus both the Declarations and Insuring Agreement portions of the policy manifest an intent to give effect to the "LIMIT OF LIABILITY" explicitly set forth in Part A.

As a fall back argument, one advanced in her response to Electric's summary judgment motion, the plaintiff argues that the declaratory judgment action "is an easy one for the Court to answer" given Electric's stipulation in the "Whereas" introductory portion of the Settlement Agreement that Yudi and her father "are separate people." (Dkt. 20, at 4). In essence, the plaintiff is reduced to claiming that the insurer gave the game away in the Settlement Agreement, with the insurer explicitly arguing that both Yudi and her father were subject to a single $100,000 limit, explicitly setting up this declaratory judgment action — but then sabotaged its own argument in the preamble to the agreement.

This is not a fair reading of the letter or intent of the Settlement Agreement. The preamble to the agreement merely acknowledges that Ernesto "has standing to file suit to seek reimbursement of those [medical] expenses separate and apart from Yudi Hernandez's claims related to the subject accident." (Dkt. 19-1, at 1). In making this acknowledgment, the agreement expressly references *Betz v. Farm Bureau Mut. Ins.*, 269 Kan. 554, 8 P.3d 756 (2000) (observing that "[g]enerally, the right to seek medical expense damages for an injured child belongs to the parent").

The whereas provision thus acknowledges that under Kansas law Ernesto had *standing* to appear as a party in the state action to seek recovery for medical expenses in light of *Betz*. But that decision does not address at all the issue in this case — whether that parent's derivative claim for medical expenses falls within limitations of liability clause.

"Standing is the determination of whether a specific person is the proper party to bring a matter before the courts for adjudication." *Landrith v. Bank of New York Mellon*, 2013

7

WL 739427, *3 (D. Kan. March 4, 2013) (citing *Allen v. Wright*, 468 U.S. 737, 750-51 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The fact that a party has standing to bring a claim does not mean he or she is automatically entitled to recover that claim on the merits. *See Long Term Care Partners v. United States*, 516 F3.d 225, 241 (4th Cir. 2008) ("whether a litigant has a sufficient personal stake in a suit is a different question than whether that litigant has stated a cause of action"); *Baker v. City of Overland Park*, 2009 WL 3083843, *5 (Kan.App. Sept. 25, 2009) ("standing in no way depends on the merits of the plaintiff's claim")

Nothing in *Betz* directly or indirectly addresses the issue before the court: how to construe the policy language providing for a maximum liability limit. The plaintiff certainly has standing to bring this claim in light of the accident and Settlement Agreement, but this does nothing to interpret the rights under the policy in question. After all, the parents in *Rosen* had standing to bring a claim for loss of consortium. The wife and surviving minor children in *Jokan* (decided two years after *Betz*) had standing to bring their claims for loss of earnings. Nevertheless, the rule in Kansas is clear that, while the family members can present their claims to the court, they remain derivative claims which are subject to unambiguous policy language imposing one liability limit. Under Kansas law, these derivative claims are shared with the underlying claim of the physically injured victim for purpose of determining the limitation of liability provided under the policy.

IT IS ACCORDINGLY ORDERED this 17th day of November, 2015, that the defendant's Motion for Summary Judgment (Dkt. 18) is granted; the plaintiff's (Dkt. 16) is denied.

                                                              s/ J. Thomas Marten
                                            J. THOMAS MARTEN, JUDGE